## S. B. LINGLE

### *v.*

## THE WEST CHICAGO PARK COMMISSIONERS.

*Opinion filed October 23, 1906.*

1. SPECIAL ASSESSMENTS—*when affidavit as to searching records is made by proper person.* In a special assessment proceeding not involving condemnation, the affidavit relating to searching the records for the names of persons last paying taxes on the property assessed is properly made by the officer who was appointed to spread the assessment or some person acting under his direction.

2. SAME—*when legal objections in "blanket form" are properly overruled.* Where counsel for an objector in a special assessment case concedes that he has not read the objections but thinks they are copied from the "stereotype blanket form," and is unable to state any reasons in support of the objections, the latter should be overruled, and the Supreme Court will not interfere even though some of the objections would be meritorious if properly presented.

3. SAME—*objections should be so framed as to apply to the conditions shown by the record.* Objections to a special assessment should be made to apply to the conditions shown by the record, so that it can be seen upon what points the decision of the court is asked and to enable the petitioner to obviate the objections if it can be done, and the practice of filing objections in the so-called "stereotype blanket form" is not approved.

4. SAME—*what evidence is admissible to show that a property owner will derive benefit.* Where an ordinance for street improvement, including water mains, lawn hydrants, electric cable conduits and lamp-posts, fails to provide for the connection of the mains with any water supply or of the electric cables with an electric current, it is proper, on the hearing before the jury, to show that arrangements have been made for such connections so that the property owners will derive the benefits the ordinance was designed to confer.

5. SAME—*what questions are not for the jury.* Whether the assessment is levied by lawful authority and whether there is a necessity for the improvement are not questions which the jury are authorized to pass upon.

6. SAME—*property is benefited if its value is increased.* Property specially assessed for an improvement is benefited by the improvement if its value, for any purpose to which it is adapted, is thereby increased.

7. SAME—*alleged errors not relied upon in brief and argument are waived.* Alleged errors enumerated in the statement preceding the brief and argument, but not relied upon or mentioned in either the brief or argument, are waived.

APPEAL from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

This is an appeal from a judgment, rendered in the circuit court of Cook county on June 17, 1905, confirming a special assessment levied on land adjacent to Marshall boulevard, by authority of the West Chicago Park Commissioners, for the purpose of improving said boulevard according to the scheme or plan of the commissioners, set forth in their ordinance. The park commissioners filed their petition for the levy of the special assessment for said improvement on April 4, 1902, and the proceedings were had under the Local Improvement act of 1897, and the acts amendatory thereof. The petition sets forth the steps taken for a public hearing, the park commissioners sitting and acting as a board of local improvements, etc. The petition also sets forth the adoption of a resolution, providing that the improvement should be divided into two sections, section 1 extending from the south curb line of West Nineteenth street to the northerly bank of the west fork of the south branch of the Chicago river, and section 2 extending from the southerly bank of the west fork of the south branch of the Chicago river to the Illinois and Michigan canal; that an estimate of the cost was made in writing by the engineer, which estimate was made a part of the record of the first resolution; that petitioner, acting as a board of local improvements, caused a notice of the time and place of the public hearing to be mailed and posted, as provided by law; that petitioner, the West Chicago Park Commissioners, prepared an ordinance, signed by its members, acting as a board of local improvements, together with an estimate of the cost itemized; that said ordinance, with the recommendation and estimate of the

222—25

cost, was referred to petitioner's committee on improvements on February 11, 1902, and published, etc.; that on February 25, 1902, the committee reported said ordinance back, recommending that it be passed, and that, on said last named day, it was passed and the estimate made by the engineer, approved. The petition alleges that the improvement provided for in section 1 of the boulevard, consists of re-surfacing the macadam roadway in the center of the boulevard, and building roadway wings extended to the outside lines thereof at all intersecting streets, constructing a granite concrete combined curb and gutter along the outside lines of the roadway and roadway wings, also sidewalks along the outside lines of the boulevard, and cross-walks across the lawn spaces; grading and filling lawn spaces on each side of the roadway; constructing storm-water sewers and catch-basins for surface drainage of the roadways; planting two rows of trees on each side of the roadway; constructing lawn hydrants for sprinkling lawns, and constructing and installing electric light conduits, cables and switches, man-holes, lamp-posts and lamps. The petition alleges that the improvement in section 2 consists of a limestone macadam roadway, fifty feet wide from curb to curb, from the west fork of the south branch of the Chicago river to Western avenue, and forty-three feet in width from curb to curb, from the drainage channel to the Illinois and Michigan canal, etc. The total estimated cost of the improvement in section 1, extending from West Nineteenth street to the south branch of the Chicago river, is $89,865.72; and of the improvement in section 2, extending from the river to the Illinois and Michigan canal, the estimated cost is fixed at $56,907.50, making a total estimated cost of the entire improvement of $148,773.22.

On April 11, 1902, John P. Garner was appointed to make the assessment, having been selected and designated by the president of the West Chicago Park Commissioners for that purpose, and he made and prepared an assessment

roll and reported and returned the same into court on March 19, 1903, and caused notices to be posted and mailed and filed affidavits thereof on July 20, 1903, on which date an order was entered that objections should be filed within three days; on August 3, 1903, a default was taken, and entered of record, as to all property not objected for. Appellant, Lingle, filed twenty-eight objections to the confirmation of the assessment against his property.

On December 28, 1904, the cause came on for hearing upon legal objections. On January 18, 1905, an order was entered permitting an amendment of the assessment roll for the purpose of correcting a description as to certain property located in section 2 of the improvement. On January 23, 1905, appellant's counsel filed a new set of objections, and on January 26, 1905, a motion to dismiss the petition. On February 4, 1905, an order was entered overruling all motions to cancel and annul the assessment, and all objections, except the objection that the assessment was not equitably and proportionately placed between the public and the property, and sustaining said last mentioned objection, and ordering that the entire assessment be referred back to the commissioner who prepared the same, with directions that the assessment be re-cast in such manner that twenty-five per cent of the total cost of the improvement be assessed as public benefits, and the remainder thereof against the property to be benefited, etc.

After the coming in of the revised assessment roll after re-casting of the assessment, and on April 19, 1905, an order was entered that all of the testimony, proceedings, arguments, objections and motions, theretofore offered and urged on behalf of the objectors to the original assessment roll, should be considered as re-offered to the revised assessment roll, and that all of the decisions, rulings and orders of the court upon the same, and all exceptions to said decisions, rulings and orders, stand and be made to apply to the revised assessment roll. Theretofore, on April 8, 1905, counsel for

appellant had filed another motion to dismiss. The motions to dismiss the petition filed by appellant's counsel were overruled. All legal objections were overruled on April 19, 1905, and thereafter, on the same day, the cause came to trial before the court and jury on the question of benefits, and the jury rendered a verdict sustaining the roll as presented, so far as appellant was concerned, and after motions for new trial and in arrest of judgment had been overruled, judgment was entered on the verdict. The present appeal is prosecuted from such judgment.

DWIGHT D. ROOT, for appellant.

BENJAMIN F. RICHOLSON, and DELAVAN B. COLE, for appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

Appellant contends that each of his motions to dismiss the proceedings should have been sustained, and that as they went to the jurisdiction of the court to entertain the proceeding at all, his rights in reference thereto were saved by his motion in arrest of judgment. In the statement preceding his brief, he points out fifty-three separate and specific errors which he says were committed by the court below, and in support of this formidable array of alleged errors he presents a brief of five pages, an argument of five pages and a reply brief of five pages, and the court having heretofore determined this cause adversely to appellant and having thereafter granted a rehearing, his brief and argument and reply brief are now supplemented by a petition for rehearing of eight pages. His brief and argument and supplemental documents are so meager that it is exceedingly difficult to understand the position of appellant with reference to the various alleged errors upon which he insists. As we understand the jurisdictional question, however, it is this:

Section 525 of chapter 24, Hurd's Revised Statutes of 1905, provides that where property is taken or damaged under the Local Improvement act the superintendent of special assessments or president of the board of local improvements shall file with the report of the commissioners an affidavit, made by himself or some employee of his office, showing that the affiant has carefully examined the records in the recorder's office in the said county for the names of the owners of record of the property which is to be taken or damaged for the improvement. A search, in this case, of the books of the collector of Cook county to ascertain the persons who last paid taxes on the respective parcels of real estate assessed, and the residences of such tax-payers, was made by Clair D. Vallette, who made affidavit thereto, from which it appears that at the request and under the direction of the officer appointed to spread the assessment he made the search in question; and appellant's position is, that as it does not appear from Vallette's affidavit that he was an employee in the office of the superintendent of special assessments or president of the board of local improvements the affidavit is insufficient.

There was no condemnation proceeding in connection with this special assessment proceeding, and the affidavit in question was made, not under the provisions of section 525, *supra,* but under the provisions of section 547 of chapter 24, *supra,* and is in compliance with the provisions of that section which require that an affidavit be made by the officer making the return, or someone acting under his direction, stating that the affiant has made an examination of the collector's books showing the payment of taxes during the last preceding year, to ascertain the person paying the taxes on the property assessed. But this section does not require the affiant to be an "employee in the office," as does section 525, *supra.* No lack of jurisdiction appears from inspection of this affidavit.

Other jurisdictional objections are pointed out in the statement and referred to in the brief, but they are not discussed in the argument, and they are so extremely technical and so entirely devoid of merit that we deem it unnecessary to discuss them.

Upon the consideration of the legal objections filed below the court undertook to ascertain what objections the appellant was insisting upon, when the following colloquy occurred between court and counsel:

The court: "Just let me take your objections for a moment, please. (Counsel here handed written objections filed on behalf of Lingle property to court.)

Mr. Root: "I have not read them myself. They were filed by another attorney.

The court: "Your first objection is, 'That the ordinance for said proposed improvement is incomplete, informal and otherwise invalid.' Do you desire to urge that objection?

Mr. Root: "May it please the court, I would not like to be catechised about those things.

The court: "Well?

Mr. Root: "I have not read them.

The court: "You have been approaching this occasion for a long time, and now you are up against the point. If you have any objections to this assessment to make, make them now. I am asking whether you desire to argue that the ordinance is incomplete, and so forth. There is no later time when this case is going to be re-opened and re-tried.

Mr. Root: "Well, if it please the court, I have just come into this case. While these objections may have been filed some time ago, I myself was only spoken to about this case a day or so ago, and I have not had time to look them over.

The court: "You are not prepared at this moment, then, to back up this objection?

Mr. Root: "I am only prepared as far as I have exhibited my hands to the court so far.

The court: "The second, 'The West Park Commissioners have no authority to pass said ordinance.' Have you anything to offer on that—argument or evidence?

Mr. Root: "No.

The court: "I will just overrule these as I go along. One and two objections overruled. 'There is shown no necessity for making said proposed improvement.' Anything to offer on that?

Mr. Root: "I don't think that would properly be tried at this time, unless your honor desires to hear it. If your honor wishes to hear evidence on that now, I think I am prepared to offer evidence on that proposition.

The court: "Well, is it an objection that you have any right to make anyway?

Mr. Root: "Only before, I think, a jury.

The court: "Then I will overrule it, and when you want to renew it before the jury I will take up the question then. No. 3 is overruled. 'The proposed improvement is for the general or public benefit.' Are you entitled to make such an objection as that?

Mr. Root: "I think that goes to benefits.

The court: "I will overrule No. 4. Now, No. 5: 'The ordinance authorizing said improvement does not specify the nature, character, locality and description of the proposed improvement.'

Mr. Root: "Well, it don't describe it fully. It omits some things and describes other things.

The court: "Which things are omitted from it and misdescribed?

Mr. Root: "If your honor will read that again I will try and catch it.

The court (reading): " 'The ordinance authorizing said improvement does not specify the nature, character, locality and description of the proposed improvement.'

Mr. Root: "May it please the court, I think those are copied right from the stereotype blanket form,—simply

typewritten; I think they are the same, verbatim; I don't know.

The court: "To shorten this matter, have you offered all the evidence or argument that you have to offer at this time upon all the objections that you filed?

Mr. Root: "I have more evidence to offer as to the benefit to the omitted property and as to that which we are speaking about.

The court: "Well, as to that I gave you leave at a later time, if you have any such to offer, to make a showing and make application for leave to present it."

The court then overruled all the legal objections.

In *Fisher* v. *City of Chicago*, 213 Ill. 268, we said (p. 270): "An appeal is allowed for the purpose of reviewing the decision of the county court upon the objections filed, and if that court has jurisdiction of the subject matter, the party appearing there must present his objections to that court. Objections must be made in such manner as to show the point on which a decision is asked and to enable the opposite party to obviate the objection, if it can be done. The county court is not charged with the duty of searching for objections which are not pointed out, and an objection not made in that court must be regarded as waived, and cannot be made for the first time on appeal to this court."

We think where counsel for an objector in a special assessment proceeding comes into court and concedes that he has not read the legal objections filed, but thinks they "are copied right from the stereotype blanket form," and is unable to state any reason whatever in support of the objections, such objections are properly overruled for the reason that they are not made in such a manner as to show to the court the points upon which the decision is sought. Where such objections, under such circumstances or under the circumstances shown in this case, are overruled by the court below, this court will not review the action of that court in the premises, even though it may be that there is, among

such legal objections, some objection that is meritorious and which should have been sustained had it been properly presented. The better practice for appellant to have followed would have been to have ascertained what legal objections might properly be made by him in this proceeding and to have so framed his objections as to make them applicable to the conditions shown by the record, and not to have filed the so-called "blanket form" of objections with the hope and belief that some one of the numerous objections specified therein might cover some valid objection thereafter to be discovered. In whatever form his objections appeared, it was his duty, if he appeared by attorney, to be represented by counsel who would ascertain what the objections filed were, and be able to advise the court upon what ground the objections should be sustained. The filing of objections in the so-called "stereotype blanket form," which is a long list of objections general in character, so worded as to cover every possible legal objection that can be expected to arise in a special assessment proceeding, without regard to what objections find support in the facts, and which have been frequently filed in proceedings of this character arising in Cook county, does not meet with the approval of this court. The practice herein above suggested as the better practice for appellant to have followed is the one which should be adopted in each instance.

In accordance with the law, the questions whether the property of objector was assessed more than it would be benefited and whether it was assessed more than its proportionate share of the cost of the improvement were tried by jury, and the verdict was for appellee.

The ordinance originating the improvement did not provide for connecting the water mains, which were to be laid to the lawn hydrants, with other water mains or with a water supply, and did not provide for connecting the electric cables with any other cable or source of electric current, and it is assigned as error that the court wrongfully allowed peti-

tioner to show, by its engineer and by an ordinance which was passed during the trial, that these connections were to be made so that the property owner would derive the benefits which would accrue from the use of the water supply which might be carried through the mains and the electric current which might be carried over the cables, in accordance with the purpose which animated petitioner in seeking to make the improvement.

In *Gray* v. *Town of Cicero,* 177 Ill. 459, the improvement under consideration was an outfall sewer, and the ordinance provided for openings on both sides for the purpose of connections with lateral sewers or drains, and it was there held proper to introduce other ordinances providing for the construction of lateral branches of the sewerage system for the purpose of showing good faith by the city in carrying out the provisions of the ordinance for lateral connections. Following the reasoning of that opinion, we think the evidence here objected to was properly admitted. It merely went to show that the property owner would obtain the benefits which the special assessment ordinance was designed to confer.

It is then said that instruction I given at the instance of petitioner was erroneous, because, in stating the issues to be tried, it recites, in a preliminary way, that the assessment is levied by the authority of the board, which is said to be equivalent to saying to the jury that it was lawfully levied. Inasmuch as the jury was not required to determine whether the assessment was lawfully levied, the instruction was not rendered harmful by that recital.

Instruction K is objected to because it tells the jury that the municipal authorities are the sole judges of the necessity for the improvement and that the question of its necessity is not for the jury. This was a correct statement of the law. *Cram* v. *City of Chicago,* 138 Ill. 506.

Instruction O is objected to because it advises the jury that if the value of the property be increased for any use for

which the property is adapted, the property will be benefited. This is said to be erroneous for the reason that the value of the property for some purposes might be entirely destroyed, but that if it is benefited for any purpose the jury should then regard it as receiving a benefit from the improvement, even though the property would be of less value after the improvement than before. The instruction is not properly the subject of this criticism. Its meaning is, that the improvement will benefit the property if it increases its value. Under that instruction the jury would not be warranted in finding that the property would be benefited if they believed that it would sustain damages in excess of the benefits it would receive. The instruction correctly stated the rule laid down in *Clark* v. *City of Chicago,* 166 Ill. 84.

Other objections made to the action of the court in giving and refusing instructions are equally without any proper basis in the law. We have examined the instructions given, and are satisfied that the jury were accurately and fairly instructed in reference to the questions which were before them for determination.

We have in this opinion disposed of all the material questions arising upon this record which counsel has discussed in his brief and argument. It is true, other alleged errors are enumerated in the statement preceding the brief and argument, but as counsel has not attempted to demonstrate by reference to the abstract that such other errors exist or to show that they were prejudicial in character, but has merely recited the existence of such other errors in his statement, and as such other errors are not mentioned or relied upon either in the brief or argument, they must be considered as waived. *Keyes* v. *Kimmel,* 186 Ill. 109, and cases there cited.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*